Joshua Briones (SBN 205293)
jbriones@mintz.com
E. Crystal Lopez (SBN 296297)
clopez@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
Century Plaza Towers 2029 Century Park East Suite 1370
Los Angeles, CA 90067
Telephone: 310-586-3200
Facsimile: 310-586-3202

Attorneys for Defendant,
HOT TOPIC, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

DIANA SOUKHAPHONH

Plaintiff,

vs.

HOT TOPIC, INC.

Defendant.

Case No. 2:16-cv-5124-DMG-AGR

[Hon. Dolly M. Gee Presiding]

**DEFENDANT HOT TOPIC, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE SUMMARY ADJUDICATION**

<u>Hearing</u>
Date: June 2, 2017
Time: 2:00 p.m.
Courtroom: 8C

- i -

**DEFENDANT HOT TOPIC, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

**PAGE**

I. INTRODUCTION .......... 1

II. FACTUAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS .......... 1

A. Hot Topic Obtains Consent Before It Sends a Text Message to Any Customer .......... 1

B. Plaintiff Has Been an Active Hot Topic Customer For Years .......... 3

C. Plaintiff Provided Consent on May 26, 2015. .......... 4

D. Plaintiff Received a Confirmation Message .......... 4

E. Plaintiff Files the Lawsuit Over The Single Confirmatory Text Message She Agreed to Receive. .......... 6

III. SUMMARY JUDGMENT STANDARD .......... 6

IV. HOT TOPIC HAD PRIOR EXPRESS CONSENT. .......... 7

A. Plaintiff Provided Consent. .......... 7

B. Hot Topic Did Not Need Prior Express Written Consent. .......... 9

C. Self-Serving Testimony Does Not Create a "Genuine Issue." .......... 11

V. CONCLUSION .......... 14

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Aderhold v. Car2go*,
668 Fed.Appx. 795 (9th Cir. 2016) .......................................................... 8, 10

*Aderhold v. Car2go N.A., LLC*,
No. C13-489RAJ, 2014 WL 794802 (W.D. Wash. Feb. 27, 2014) .........7, 8, 10, 11

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)........................................................................................ 6

*Baird v. Sabre Inc.*,
995 F. Supp. 2d 1100 (C.D. Cal. 2014)........................................................ 8

*Bais Yaakov of Spring Valley v. Federal Communications Commission*,
852 F.3d 1078 (D.C. Cir. 2017)..................................................................... 9

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)........................................................................................ 6

*Daniel v. Five Stars Loyalty, Inc.*,
No. 15-CV-03546-WHO, 2015 WL 7454260 (N.D. Cal. Nov. 24, 2015) ........................................................................................ 8, 10, 11

*Emanuel v. Los Angeles Lakers, Inc.*,
Case No. 12–9936–GW(SHx), 2013 WL 1719035 (C.D. Cal. Apr. 18, 2013) ........................................................................................ 8

*First Nat'l Bank of Arizona v. Cities Serv. Co.*,
391 U.S. 253 (1968)...................................................................................... 6, 7

*Folex Golf Indus., Inc. v. China Shipbuilding Indus., Corp.*,
No. CV09–2248–R, 2013 WL 1953628 (C.D. Cal. May 9, 2013) ........................ 12

*Hudson v. Sharp Healthcare*,
No. 13-CV-1807-MMA NLS, 2014 WL 2892290 (S.D. Cal. June 25, 2014) ........................................................................................ 8

*Ibey v. Taco Bell Corp.*,
No. 12-CV-583-H (WVG), 2012 WL 2401972 (S.D. Cal. Jun. 18, 2012) ........................................................................................ 6

*In re SoundBite Comm'ns, Inc.*, 27 F.C.C.R. 15391 (Nov. 29, 2012) ........ 6

*Jayne v. Sprint P.C.S.*, No. 2:07–cv–2522 LKK KJN, 2010 WL 2817169 (E.D. Cal. July 15, 2010) ........ 13

*Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036 (9th Cir. 2012) ........ 7

*Reardon v. Uber Technologies, Inc.*, 115 F.Supp.3d 1090 (N.D. Cal. 2015) ........ 10

*Rivera v. Nat'l R.R. Passenger Corp.*, 331 F.3d 1074 (9th. Cir. 2003) ........ 13

*Satterfield v. Simon & Schuster, Inc.* 569 F.3d 946 (9th Cir. 2012) ........ 7

*Scott v. Harris*, 550 U.S. 372 (2007) ........ 12

*Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097 (9th Cir. 2008) ........ 7

*United States v. Blackburn*, 992 F.2d 666 (7th Cir.1993) ........ 12

*Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037 (9th Cir. 2017) ........ 7, 8

*Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054 (9th. Cir. 2002) ........ 12, 13

**Statutes**

47 U.S.C. § 227(b)(1)(A)(iii) ........ 7

47 U.S.C. § 227(b)(2) ........ 7

**Other Authorities**

47 CFR § 64.1200 ........ 9

47 C.F.R. § 64.1200(a)(2) ........ 9, 10

47 C.F.R. § 64.1200(f)(1) .......... 9

47 C.F.R. § 64.1200(f)(8) .......... 9

47 C.F.R. § 64.1200(f)(12) .......... 9

Fed. R. Civ. P. 56(d) .......... 7

Fed. R. Civ. P. 56(e) .......... 6

Federal Rule of Evidence 803(6) .......... 12

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order*, 7 FCC Rcd. 8752, 8769 (Oct. 16 1992) .......... 7, 8

# I. INTRODUCTION

Plaintiff has been a loyal Hot Topic customer for years. Since creating a Hot Topic customer account in 2009, Plaintiff has spent thousands of dollars over the course of dozens of transactions. In fact, Plaintiff's customer records show she has been actively shopping at Hot Topic since she filed this lawsuit. Throughout this time, Plaintiff received a total of one text message from Hot Topic, only after she made a purchase online and requested to be subscribed to receive alerts via text! What is more, that lone text was not an advertisement; it merely confirmed the subscription she requested. After receiving the single text message, Plaintiff replied "STOP" and did not receive any alerts via text. Nevertheless, Plaintiff filed this class action.

Plaintiff gave Hot Topic prior express consent to send her a text message confirming her subscription by providing her number and subscribing to Hot Topic's text message alerts service. Therefore, Plaintiff's TCPA claims fail as a matter of law.

# II. FACTUAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

## A. Hot Topic Obtains Consent Before It Sends a Text Message to Any Customer

Hot Topic is a clothing and merchandise retailer. (Declaration of Andrew Snyder "Snyder Decl.," ¶ 3.) Like virtually all other retailers, Hot Topic maintains relations with its customers in multiple different ways, including a Hot Topic loyalty rewards program[1], Hottopic.com customer accounts, email communications and text message alerts. (*Id*.) Hot Topic maintains a text messages alerts subscription service. (*Id*. at ¶ 5.) Customers who subscribe to this service receive text message alerts from Hot Topic regarding special offers or promotions. (*Id*.) Hot Topic's company policy

[1] Hot Topic's Loyalty Rewards program allows customers to accrue points on each of their purchases and use those points towards future purchases in order to receive discounts. (Snyder Decl. at ¶ 4.) Not surprisingly, Plaintiff is a loyalty rewards member. (Declaration of Crystal Lopez ("Lopez Decl."), Ex. 1 (Soukhaphonh Depo) at 35:3-7.)

is to send text message alerts only to customers who voluntarily subscribe to the alerts service. (*Id*. at ¶ 6.)

At all relevant times, Hot Topic obtained consent to send text messages from a variety of different sources.[2] (*Id*. at ¶ 7.) Customers with a Hot Topic website account could consent through their member profiles. (*Id*.) Any customer transacting with Hot Topic's website as a guest could join the subscription alerts service during an online purchase. (Statement of Undisputed Material Facts ("SUF"), ¶ 1.) Customers could also subscribe to the text message alerts service by contacting Hot Topic by phone, email, or in-person at a Hot Topic location. (Snyder Decl. at ¶ 7.)

Relevant to this motion is the consent given during online transactions. Customers who do not have an account with Hot Topic (or customers who have an account but do not log in to that account) transact with Hot Topic as a "guest" when purchasing an item. (*Id*. at ¶ 8.) During the transaction, the customer must complete a guest checkout form, which requires the customer to provide their name, contact information, as well as billing and shipping information. (*Id*. at ¶ 9, Ex. 1.)[3] On this guest checkout form, directly below the fields where the customer inserts their phone number and email address, are two boxes beside corresponding statements. (*Id*. at ¶ 11, Ex. 1.) The statements read:

☑ Yes, I want to receive emails about new merch, special promotions and more.

☑ Yes, I want to receive text messages about special events and offers.

---

[2] As explained in more detail below, the relevant time period in this case is from May 2015 to November 2015. In the interests of clarity, all references in this motion to Hot Topic's practices and procedures refer to those in place during that time period unless specified otherwise.

[3] The Hot Topic website has changed designs twice from 2009 to the present. (Snyder Decl., ¶ 10.) Since Plaintiff's consent was given on May 26, 2015, Exhibit 1 attached to Andrew Snyder's Declaration is the guest checkout page active on that date. (*Id*., Ex. 1.)

(*Id.*) The customer submits their order with the boxes checked or unchecked to indicate whether or not they would like to receive email or text message alerts from Hot Topic.[4] (*Id.*) If a customer placed an order with one of those two boxes checked, Hot Topic's website and e-commerce software, Blue Martini ("Blue Martini"), recorded and stored the relevant contact information about that customer. (*Id.* at ¶ 17; Declaration of Sean Mulyanto-Mong ("Mulyanto-Mong Decl."), ¶ 3, Ex. 1 (KPMG Report).) Blue Martini also updated the customer's records to reflect the subscription. (SUF, ¶ 2.) If a customer subscribed to Hot Topic's text message alerts service, Hot Topic would send that customer a text message to confirm their subscription. (Snyder Decl., ¶ 18.) Hot Topic sent this confirmation message before it sent the customer any promotional text messages. (*Id.* at ¶ 19.)

Customers may unsubscribe from the text message alerts service in several different ways: (1) by texting "STOP" in response to any text message received, including the initial confirmation message; (2) by calling Hot Topic and informing the company they no longer want to receive messages; (3) by emailing Hot Topic and informing the company they no longer want to receive messages; (4) by entering a Hot Topic store and informing a store associate they no longer want to receive messages; or (5) by logging in to their Hot Topic website account and cancelling the subscription through their profile. (*Id.* at ¶ 20.)

**B. Plaintiff Has Been an Active Hot Topic Customer For Years**

Despite the allegations in her Complaint, Plaintiff has an extensive customer history with Hot Topic. Plaintiff created a Hottopic.com customer account sometime in 2009. (Lopez Decl., Ex. 1 (Soukhaphonh Depo) at 33:6-9.) From February 12, 2010 to the present, Plaintiff made approximately forty-three separate online purchases. (Declaration of Mohan Indraganti ("Indraganti Decl."), Ex.1.) Indeed, Plaintiff ordered merchandise from the Hot Topic website as recently as March 26,

[4] Consistent with industry practice, those boxes appeared pre-checked. (Snyder Decl., ¶ 12.) The customer simply unchecks the boxes to indicate she does not want to receive emails or text messages from Hot Topic. (*Id.*)

2017, approximately one month prior to this motion and eight months after she filed this lawsuit. (*Id.*; Lopez Decl., Ex. 1 (Soukhaphonh Depo) at 42:20-24.)

**C. Plaintiff Provided Consent on May 26, 2015.**

On May 26, 2015, Hot Topic utilized Blue Martini to collect customer and transaction information from the company's website, Hottopic.com. (Snyder Decl., 13.) When a customer transacted with the website, Blue Martini contemporaneously recorded all relevant information about the transaction, including whether or not the customer consented to receive text messages or email communications. (*Id.* at ¶ 17.) If a customer subscribed to text message alerts during an online transaction, Blue Martini automatically updated the customer's records to reflect the subscription. (SUF, ¶ 2.)

On May 26, 2015, Plaintiff visited Hot Topic's website and purchased merchandise. (SUF, ¶ 3.) In doing so, Plaintiff provided her 1810 cellular telephone number in the guest checkout form. (SUF, ¶ 4.) After Plaintiff submitted her May 26, 2015 order, her Blue Martini customer records updated to show she subscribed to text message alerts. (SUF, ¶ 5.) She therefore provided her consent to receive text messages during this May 26, 2015 purchase. (See *Id.*)

**D. Plaintiff Received a Confirmation Message**

At the time Plaintiff consented to receive text messages on May 26, 2015, Hot Topic was not running an active text message campaign. Hot Topic's active text message campaign did not begin until November 2015. Prior to initiating its November 2015 campaign, on November 4, 2015, Hot Topic sent Plaintiff the following text message:

> "Thanks! Ur subscribed to Hot Topic Alerts: 8 msg/mo. Reply STOP to Cancel, HELP for Help. For info visit www.4u2entr.com/hottopic info. Msg&Data rates may apply."

(SUF, ¶ 6.) This text message confirmed Plaintiff had subscribed to Hot Topic alerts. The text message did not promote, encourage, or even refer to the commercial sale of any Hot Topic merchandise. (SUF, ¶ 7.)

The web link provided in the text, www.4u2entr.com/hottopic, directs users to the Hot Topic subscription alert services web page. (SUF, ¶ 8.) This web page is a stand-alone page separate from Hot Topic's commercial website. (Snyder Decl. at ¶ 22.) The web page is shown below:

HOT TOPIC

Hot Topic transaction and subscription alert services

Hot Topic subscription alerts, you can unsubscribe at any time by texting **STOP** to 86742. This service will automatically renew until you cancel. By subscribing, you consent to receiving 8 messages per month from Hot Topic. Hot Topic transaction alerts, one alert per user submitted keyword. Message and Data Rates May Apply. All charges are billed by and payable to your mobile service provider. We will not be liable for any delays in the receipt of any SMS message as delivery is subject to effective transmission from your network operator. Data obtained from you in connection with this SMS service may include your mobile number, your carrier's name and the date, time and content of your messages.

HELP instructions: Text **HELP** to 86742 for help or call 1.800.892.8674

STOP instructions: Text **STOP** to 86742 to cancel

**Msg&Data Rates May Apply.** All charges are billed by and payable to your mobile service provider. Charges will appear on your wireless bill or be deducted from your prepaid balance. You must be account holder or have permission from the account holder. You must be 18 years or older or have permission from a parent or guardian

**Contact Information: htcustsvc@hottopic.com or call 1.800.892.8674**

Hot Topic Privacy Policy

Hot Topic Mobile Terms & Conditions

The web page describes Hot Topic's alerts service and instructs users how to unsubscribe from the service. (*Id*. at ¶ 23.) The web page provides links to both Hot Topic's Privacy Policy and Mobile Terms & Conditions, and also provides a contact email address for questions regarding the service. (*Id*. at ¶ 23.) The Hot Topic subscription alert services web page does not promote or encourage the commercial sale of any Hot Topic product. (SUF, ¶ 7.)

Shortly after Plaintiff received the November 4, 2015 Text Message, she responded with a "STOP" text message. (SUF, ¶ 9.) In response, Hot Topic's third party vendor, Impact Mobile, Inc., sent Plaintiff a message confirming that she was no longer subscribed to Hot Topic alerts and would no longer receive messages from Hot Topic. [5] (SUF, ¶ 10.) Plaintiff has not received another text message from Hot Topic since then. (SUF, ¶ 11.)

### E. Plaintiff Files the Lawsuit Over The Single Confirmatory Text Message She Agreed to Receive.

Plaintiff's Complaint does not describe the confirmatory text message she received. Instead, she incorrectly alleges that the lone November 4, 2015 Text Message was a telemarketing and advertisement message. (Complaint at ¶¶ 19, 31.) Of course, Plaintiff claims Hot Topic needed, but never obtained, express written consent before sending her the confirmatory text message. (*Id*. at ¶¶ 1, 31.)

## III. <u>SUMMARY JUDGMENT STANDARD</u>

Summary judgment is appropriate where no genuine issues of material fact exist and a party is entitled to prevail in the case as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

The burden then shifts to the nonmoving party to "go beyond the pleadings" – using affidavits, depositions, answer to interrogatories, or other means – to demonstrate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also *Anderson*, 477 U.S. at 248. The nonmoving party must present "significant probative evidence tending to support the complaint." *First Nat'l Bank*

[5] The second text message confirming that Plaintiff cancelled her subscription service is not at issue in this case. It is well established that a text message confirming user's request to unsubscribe from future messages does not violate the TCPA. See *Ibey v. Taco Bell Corp*., No. 12-CV-583-H (WVG), 2012 WL 2401972, at *3 (S.D. Cal. Jun. 18, 2012); *In re SoundBite Comm'ns, Inc*., 27 F.C.C.R. 15391 (Nov. 29, 2012) ("sending a one-time text message confirming a consumer's request that no further text messages be sent does not violate the T[CPA]").

*of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968). "[F]acts essential to justify its opposition" are required. See Fed. R. Civ. P. Rule 56(d). "Conclusory statements without factual support are insufficient to defeat a motion for summary judgment." *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008).

## IV. HOT TOPIC HAD PRIOR EXPRESS CONSENT.

The TCPA makes it unlawful to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice…(iii) to any telephone number assigned to a…cellular telephone…" 47 U.S.C. § 227(b)(1)(A)(iii). A text message constitutes a "call" for the purpose of the TCPA. *Satterfield v. Simon & Schuster, Inc*. 569 F.3d 946, 954 (9th Cir. 2012).

To sustain a TCPA claim, a plaintiff must show that: (1) defendant called their cell phone; (2) using an ATDS; (3) without their prior express consent. *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012). The focus of this motion is on the third element. Because the statute requires a lack of consent for a violation, prior consent is a complete defense to a TCPA claim. *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017). As the evidence indisputably shows, Hot Topic obtained the prior express consent necessary to send the confirmatory text message to Plaintiff on November 4, 2015.

### A. Plaintiff Provided Consent.

The TCPA delegated to the FCC the authority to "prescribe regulations to implement the requirements" of the TCPA. 47 U.S.C. § 227(b)(2). In the words of the FCC: "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." See *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order*, 7 FCC Rcd. 8752, 8769 (Oct. 16 1992) ("FCC's 1992 order"). The Ninth Circuit has consistently followed this principle. *See Van Patten*, 847 F.3d at 1044-46; *Aderhold v. Car2go*

*N.A., LLC*, No. C13-489RAJ, 2014 WL 794802, at *8 (W.D. Wash. Feb. 27, 2014), *aff'd*, 668 Fed.Appx. 795 (9th Cir. 2016); see also *Baird v. Sabre Inc*., 995 F. Supp. 2d 1100, 1102-03 (C.D. Cal. 2014) ("Myriad federal district courts have relied on the [FCC's 1992 order] to conclude that plaintiffs who provided a business with their telephone number and then received a text message from the business had no claim under the [TCPA].").

The only limitation placed on the sender is that the message should bear some relation to the reason for which the customer provided the phone number. *Van Patten*, 847 F.3d at 1045; *Hudson v. Sharp Healthcare*, No. 13-CV-1807-MMA NLS, 2014 WL 2892290, at *6 (S.D. Cal. June 25, 2014) ("The TCPA does not require that calls be made for the exact purpose for which it was provided, but rather that the call bear some relation to the product or service for which the number was provided."). What constitutes a sufficient relationship varies depending on the circumstances; however, in the Ninth Circuit if a customer provides her telephone number while placing an order, applying for membership, or joining a subscription/points service, then the sender has obtained the prior express consent necessary to send that customer messages regarding that transaction. See *Van Patten*, 847 F.3d at 1046; *Aderhold v. Car2go*, 668 Fed.Appx. 795, 796 (9th Cir. 2016) (holding that plaintiff "consented to receiving text messages related to the application process from car2go simply by providing his phone number in the application for membership"); *Daniel v. Five Stars Loyalty, Inc*., No. 15-CV-03546-WHO, 2015 WL 7454260, at *1 (N.D. Cal. Nov. 24, 2015) (holding that plaintiff consented to receive text messages about Flame Broiler's rewards program when plaintiff agreed to join the program and provided his telephone number during an in-store purchase); *Emanuel v. Los Angeles Lakers, Inc*., Case No. 12–9936–GW(SHx), 2013 WL 1719035, at *3 (C.D. Cal. Apr. 18, 2013) ("many federal courts have concluded that when a customer provides a company his or her phone number in connection with a transaction, he or she consents to receiving calls about that transaction").

The facts here fall squarely within this rule. Plaintiff ordered merchandise from the Hot Topic website on May 26, 2015. (SUF, ¶ 3.) In the guest order checkout form, Plaintiff provided her phone number and submitted her order to Hot Topic with the text message subscription service box checked –requesting to join Hot Topic's subscription text message alerts service. (SUF, ¶¶ 4-5.) The text message Plaintiff received was simply a message to confirm the subscription she requested during her transaction. (SUF, ¶ 6.) Under the laws promulgated by both the FCC and the Ninth Circuit, Plaintiff gave Hot Topic prior express consent to send the message.

**B. Hot Topic Did Not Need Prior Express Written Consent.**

Plaintiff incorrectly claims Hot Topic needed prior express ***written*** consent to send the message. However, the standard Plaintiff is incorrectly seeking to impose on Hot Topic applies only to advertisements or telemarketing. On October 16, 2013, the FCC implemented regulations governing telemarketing and advertisement calls to cellular phones. See 47 C.F.R. § 64.1200(a)(2).[6] These new regulations prohibit "any telephone call that includes or introduces ***an advertisement or constitutes telemarking***, using an automatic telephone dialing system" to cellular phones unless it is made "with the prior express ***written consent*** of the called party."[7] 47 C.F.R. § 64.1200(a)(2)(emphasis added). The regulations define "advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services." 47 C.F.R. § 64.1200(f)(1). "Telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12).

[6] Certain portions of 47 CFR 64.1200 not relevant to this motion were recently held invalid by the United States Court of Appeals, District of Columbia Circuit, in *Bais Yaakov of Spring Valley v. Federal Communications Commission*, 852 F.3d 1078 (D.C. Cir. 2017).

[7] "Prior express written consent" is subject to more comprehensive compliance rules under the TCPA. See 47 C.F.R. § 64.1200(f)(8).

Importantly, the written consent requirement ***only applies to advertising and telemarketing messages***. See 47 C.F.R. § 64.1200(a)(2). All other text messages require only prior consent. *Reardon v. Uber Technologies, Inc.*, 115 F.Supp.3d 1090, 1094 (N.D. Cal. 2015) ("if a text message 'includes or introduces an advertisement' or 'constitutes telemarketing,' it may only be sent with the recipient's prior express written consent, whereas other texts require only prior express consent to be legal.")

Here, the message Plaintiff received is not telemarketing or an advertisement. The message did not promote the sale of any Hot Topic merchandise. The sole purpose of the message was to confirm Plaintiff's subscription to the alerts service.

Ninth Circuit courts have held equivalent text messages relating to subscription services were not advertising within the meaning of the TCPA (and thus did not need prior express written consent). For instance, in *Aderhold v. Car2go N.A., LLC*, the plaintiff registered to become a Car2go member by filling out an application on the company's website. No. C13-489RAJ, 2014 WL 794802, at *1. After submitting his application, the plaintiff received a text message stating: "Please enter your car2go activation code 145858 into the emailed link. We look forward to welcoming you to car2go." *Id*. The plaintiff sued, claiming that the text message was a telemarketing or advertisement message sent without written consent. *Id*. at *2. The district court granted Car2go's summary judgment motion and the Ninth Circuit upheld the ruling. *Aderhold*, 668 Fed.Appx. at 796. The Ninth Circuit explained that Car2go's text message was not telemarketing because it only concerned the plaintiff's membership registration, and "contain[ed] no content encouraging purchase of car2go services." *Id*. After establishing that the text message was not telemarketing, the court confirmed that the plaintiff gave Car2go consent to send its non-telemarketing message when plaintiff provided his phone number on the membership application. *Id*.

Similarly, in *Daniel v. Five Stars Loyalty*, the plaintiff had lunch at a Flame Broiler fast food restaurant. No. 15-cv-03546-WHO, 2015 WL 7454260 at *1.

During his purchase, Plaintiff inquired about Flame Broiler's Five Stars consumer rewards program offered to customers. *Id*. The cashier informed the plaintiff about the program, at which point the plaintiff provided his number to the cashier to join. *Id*. Plaintiff then received a text message that read: "Welcome to Five Stars, the rewards program of Flame Broiler. Reply with your email to finish registering and get free pts! Txt STOP to unsubscribe." *Id*. The plaintiff argued that the text messaging was an advertisement because the purpose of the text was to encourage the customer to make additional purchases at Flame Broiler through the rewards program. *Id*. at *4-5. The Federal District Court of the Northern District of California rejected the argument. *Id*. at *5. In doing so, the court held that the purpose of the text was to confirm with plaintiff that he joined the Five Stars program, not to advertise the sale of goods. *Id*. at *4-5. The court ultimately held that the defendant did not violate the TCPA because plaintiff gave prior express consent for the confirmation message when he provided his phone number for the Five Stars program. *Id*. at *7.

Here, the message is identical to the text messages at issue in *Aderhold* and *Daniel*. Plaintiff joined Hot Topic's subscription alerts service. In response, Hot Topic sent her a text message simply to confirm her subscription. No merchandise was advertised. In fact, even Plaintiff admits that the message (and its accompanying subscription alerts webpage) was not advertising merchandise to her. (Lopez Decl., Ex. 2 (Ex. 5 to Soukhaphonh Depo) & Ex. 1 (Soukhaphonh Depo) at 27:14-30:13; Snyder Decl., ¶ 21, Ex. 2.) Hot Topic did not need prior express *written* consent.

**C. Self-Serving Testimony Does Not Create a "Genuine Issue."**

As mentioned above, Hot Topic recorded website transactions and customer information using Blue Martini. (Snyder Decl. ¶, 13.) A critically important characteristic of Blue Martini is that the customer records are generated contemporaneously and in response to customer activity. (*Id*. at ¶ ¶ 16-18.) Blue Martini records show Plaintiff, using her name, address, email address and phone

number, placed an order with Hot Topic on May 26, 2015 as a guest. (SUF, ¶ ¶ 3-4.) After Plaintiff submitted this order, her records updated to reflect she was subscribed to the text message subscription service. (SUF, ¶ 5.) The *only* conclusion that can be drawn from these facts is that Plaintiff submitted her order with the text message subscription box checked.

The United States Supreme Court has explained that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007), *accord*, *Villiarimo v. Aloha Island Air, Inc*., 281 F.3d 1054, 1061 (9th. Cir. 2002) ("[T]his court has refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony"); *Folex Golf Indus., Inc. v. China Shipbuilding Indus., Corp*., No. CV09–2248–R, 2013 WL 1953628, at *4 (C.D. Cal. May 9, 2013) ("Where the record contradicts a party's allegations to the extent that no reasonable jury could believe them, a court is justified in adopting the story supported by the bulk of the evidence") *reversed and remanded on other grounds in* 603 Fed.Appx. 576 (9th. Cir. 2015).

This rule defeats Plaintiff's case. The business records establish that she provided consent. KPMG, an independent, third-party accounting firm conducted an independent data verification procedure on Plaintiff's Blue Martini records. (Mulyanto-Mong Decl. at ¶ 2.) KPMG found that: (1) Plaintiff's Blue Martini records are authentic and accurate records[8]; (2) Plaintiff's Blue Martini records were automatically recorded, stored, and in no way altered; and (3) Plaintiff submitted an

---

[8] The Blue Martini records are admissible under Federal Rule of Evidence 803(6). Moreover, these records are more reliable than any testimony Plaintiff could provide on a transaction that occurred years ago. "Records prepared and kept in the ordinary course of business are presumed reliable for two general sorts of reasons. [Citation omitted.] First, businesses depend on such records to conduct their own affairs; accordingly, the employees who generate them have a strong motive to be accurate and none to be deceitful. Second, routine and habitual patterns of creation lend reliability to business records." *United States v. Blackburn*, 992 F.2d 666, 670 (7th Cir.1993) (citing *United States v. Rich*, 580 F.2d 929, 938 (9th Cir.1978).

order to Hot Topic as a guest on May 26, 2015, which prompted a change in Plaintiff's text message subscription status. (Mulyanto-Mong Decl. at ¶ 3 (KPMG Report).) KPMG ultimately came to the same conclusion as Hot Topic: Plaintiff agreed to subscribe to Hot Topic's text message alerts during her May 26, 2015 purchase. (*Id.*)

Plaintiff, on the other hand, has no evidence to support her theory. The only "evidence" Plaintiff can provide is her own self-serving testimony. The Ninth Circuit has "refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony." *Villiarimo*, 281 F.3d at 1061; *Rivera v. Nat'l R.R. Passenger Corp.*, 331 F.3d 1074, 1078 (9th. Cir. 2003) ("Conclusory allegations unsupported by factual data cannot defeat summary judgment."); *Jayne v. Sprint P.C.S.*, No. 2:07–cv–2522 LKK KJN, 2010 WL 2817169, at *9, fn. 34 (E.D. Cal. July 15, 2010) ("Plaintiff may not create disputes of fact by writing a self-serving declaration. For example, self-serving declarations that are physically impossible or that are both uncorroborated and contradicted by other credible evidence are insufficient.")

In the face of the overwhelming evidence contradicting her story, Plaintiff cannot create a genuine issue of material fact to dispute the consent she gave to Hot Topic on May 26, 2015. Accordingly, summary judgment is proper.

///

///

///

///

///

///

///

///

///

## V. **CONCLUSION**

Plaintiff received a text message she requested. The time and resources wasted by Hot Topic and this Court with Plaintiff's meritless class action must end. Hot Topic respectfully urges that the Court grant this Motion for Summary Judgment.

DATED: May 5, 2017

Respectfully submitted,

MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.

By: /s/ E. Crystal Lopez
Joshua Briones
E. Crystal Lopez

Attorneys for Defendant,
HOT TOPIC, INC.

- 14 -

DEFENDANT HOT TOPIC, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT